# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

ABDI HASHI,

       Petitioner,    :    Case No. 2:21-cv-2772

   - vs -             Chief Judge Algenon L. Marbley
                 Magistrate Judge Michael R. Merz

BRIAN COOK, Warden,
  Southeast Correctional Institution,

              :

     Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought pursuant to 28 U.S.C. § 2254 by Petitioner Abdi Hashi with the assistance of counsel[1], is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Warden's Return of Writ (ECF No. 9), and Petitioner's Traverse (ECF No. 14).

The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in this District.

---

[1] The Return of Writ incorrectly states that this case was filed *pro se* (Return, ECF No. 9, PageID 1088). In fact Hashi has been represented by counsel throughout. See Petition, ECF No. 1, PageID 16.

**Litigation History**

On April 13, 2018, a Delaware County Grand Jury indicted Petitioner on one count of trafficking in drugs with a major drug offender specification and one count of possession of drugs with a major drug offender specification. (Indictment, State Court Record, ECF No. 8, Exhibit 1). After a motion to suppress both physical evidence and statements Hashi made to the police was denied, the case was tried to a jury which convicted Petitioner on both counts. He was then sentenced to eleven years imprisonment, the mandatory minimum sentence. Hashi, represented by new counsel, took a direct appeal to the Ohio Fifth District Court of Appeals. That court affirmed the conviction. *State v. Hashi,* 2020-Ohio-177 (Ohio App. 5th Dist. Jan. 22, 2020). The Ohio Supreme Court declined jurisdiction of a further appeal. *State v. Hashi,* 158 Ohio St.3d 1523 (2020). Hashi filed his Petition in this Court on May 25, 2021, pleading the following grounds for relief:

> **Ground One**: An encounter is not consensual where the individual is prevented by law enforcement from leaving while an investigation without reasonable suspicion.
>
> **Supporting Facts:** [The Petition does not include a statement of supporting facts, but refers the reader to the attached brief.]
>
> **Ground Two:** Acquiescence is insufficient to establish the voluntariness of consent given where law enforcement had unconstitutionally detained an individual and had already taken possession of the item.
>
> **Supporting Facts:** [The Petition does not include a statement of supporting facts, but refers the reader to the attached brief.]
>
> **Ground Three:** The admission of testimony regarding the work of non-testifying analysts elicited to bolster the testimony of a testifying witness is a violation of the Confrontation Clause.
>
> **Supporting Facts:** [The Petition does not include a statement of supporting facts, but refers the reader to the attached brief.]

**Ground Four:** The conviction was based on legally insufficient evidence which resulted in a violation of Petitioner's right to due process.

**Supporting Facts:** [The Petition does not include a statement of supporting facts, but refers the reader to the attached brief.]

(Petition, ECF No. 1).

# Analysis

## Ground One: Conviction on the Basis of Evidence Seized in Violation of the Fourth Amendment

In his first Ground for Relief, Hashi claims he was convicted on the basis of evidence seized from him in violation of the Fourth Amendment. The facts of the seizure are summarized by the Fifth District in its opinion on direct appeal:

> {¶11} Amanda Carson testified that she is a manager at a UPS Store in Delaware County, and that on August 17, 2017, a package arrived unexpectedly and without a recipient mailbox. T. at 217. The label indicated it was coming from Germany, and no one had called ahead to let her know to receive a delivery. T. at 216-218. She didn't know the business name and did not have it listed as a package on the list of packages scheduled to be delivered to the store. T. at 216. She explained that it was unusual to receive a package for someone who did not have a mailbox at the store. Upon receipt, Carson noticed damage to the package; the cardboard box was wet, and it was starting to break and open up. T. at 226. As she began to tape the package, she saw a leafy asparagus-like substance inside the box. It was green, wet, and musty. T. at 225-226. She did not open the box further at that time. However, she noted the smell of the box was similar to one she received in 2009. T. at 226.
>
> {¶12} Carson explained that back in 2009, she became familiar with a plant called khat when she as working at a different UPS store. T. at 221. At that time, khat had been shipped to her store, and she had the opportunity to observe it. She recalled it was a green, leafy, asparagus like plant with a musty damp smell to it. T. at 223. When she looked online, back in 2009, the pictures of khat she observed matched what she observed was delivered to her store at that time. T. at 225. The smell of the package in this case, as well as the plant

material inside, was similar to what she previously observed in 2009. T. at 226. Based upon her prior experience, she became suspicious of the package and contacted the Delaware County Sherriff. T. at 229.

{¶13} Deputy Gibson arrived approximately two hours and forty-five minutes after the package arrived at the UPS store. T. at 229. While he was there and Carson was filling out a statement, Appellant arrived to retrieve the package. T. at 230. Deputy Gibson advised Carson to give Appellant the package. Another employee checked Appellant's identification and had Appellant pay the Five Dollars ($5.00) to receive the package, which is the standard fee for individuals who do not have a box at the store. T. at 232. Shortly thereafter, Deputy Gibson made contact with Appellant. *Id.*

{¶14} Deputy Gibson testified regarding his extensive law enforcement training and experience; this experience included advanced drug detection and identification. T. at 419-424. He explained that on August 17, 2017, he was on duty and received a call from Amanda Carson about a suspicion [sic] package that had been delivered to her UPS store on Polaris Parkway in Delaware County. T. at 423-424. Deputy Gibson then travelled to the UPS store and parked his marked cruiser behind the building. T. at 426. After talking with Carson, he examined the suspicious package. It was addressed to "Bronson Auto Tuning," a business he determined to be a fictitious business, with Appellant's name underneath. T. at 428. When he examined the package on that date, he could see "a little" inside the package. However, he noticed a unique odor that was coming from inside the package that he had never smelled before. T. at 429. This all occurred in the back of the UPS store. T. at 430.

{¶15} Roughly twenty minutes after Deputy Gibson arrived at the UPS store, Appellant arrived to pick up his package. T. at 430. After he saw Appellant enter the store, Deputy Gibson waited out of view until he was informed Appellant had paid for the package. At that point, he made himself known to Appellant. T. at 431. Appellant was holding the suspicious package when Deputy Gibson first made contact with him. T. at 453. Deputy Gibson then had a conversation with Appellant that was recorded. T. at 433. The recording of the encounter, which lasted roughly ten minutes, was played for the jury. T. at 433.

{¶16} Appellant said he was at the UPS store to pick up the package. T. at 436:1. He claimed that Ali, a friend of his, sent him there to pick up the package. T. at 436; 439. Deputy Gibson told Appellant

that he knew what was in the package and asked Appellant if it was khat. T. at 437. When asked about the weight of the package, Appellant explained that it was not just for him, but was for the community. T. at 440. Appellant informed Deputy Gibson that they chew khat. T. at 438. Deputy Gibson described Appellant as acting extremely nervous even in response to general questions. T. at 438. Deputy Gibson also described Appellant as being evasive. T. at 438.

{¶17} Appellant stated he would pay approximately Four Dollars ($4.00) per piece to get the khat from Germany. T. at 442. Appellant further explained that he chewed no more than two pieces a day and estimated there were seventy to eighty pieces were contained in the box. T. at 443. Appellant again explained he was there to pick up the package for his friend, that they chew the khat together, and that he would receive five (5) pieces as his share for getting the package. T. at 444. Appellant said there were twenty (20) or thirty (30) pieces of khat in each bundle in the package. T. at 444.

{¶18} Based upon Appellant's estimated value, the 99 bundles of Khat would be valued at approximately $8,000 dollars. T. at 448. Deputy Gibson stated that it was his opinion the khat was not solely for personal use as there were approximately 2000 stalks in the package. Chewing only two pieces a day, as Appellant claims he did, would take a very long time to use the quantity he received in this case. He explained this belief was consistent with Appellant's statement that the khat was for the community. T. at 448.

*State v. Hashi, supra.*

Respondent argues that habeas consideration of Ground One is barred by the doctrine of *Stone v. Powell,* 428 U.S. 465 (1976). There the Supreme Court held Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts.

Petitioner notes that a two-part analysis applies to Fourth Amendment claims brought in habeas. *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does, as Petitioner concedes (Traverse, ECF No. 14, PageID 1122). The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is

allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits.  *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982).

Petitioner claims that he meets this second branch of the exception to *Stone* in that he "was deprived of a fair opportunity to have meaningful state court consideration of his challenges." (Traverse, ECF No. 14, PageID 1122).  This is because the Fifth District erroneously determined the encounter between Petitioner and Deputy Sheriff Gibson was consensual, an "improper [application] of the facts to prevailing law." *Id.* at PageID 1123.  Hashi insists his encounter with Deputy Gibson was not consensual because (1) Gibson began directing him to stand in certain locations (Transcript of Suppression Hearing (ECF No. 8-1, Page ID 293, 294)); (2) Gibson did not tell Hashi he was free to leave (*Id.* at PageID 295); (3) Gibson had Hashi's driver's license and did not return it until he "had acquiesced to the deputy's commands." (*Id.* at PageID 295-96, 316); and (4) Gibson was standing behind Hashi's car, blocking him from leaving (*Id.* at Page ID 296-97).  Given these facts, Petitioner argues, the trial court and the Fifth District should have found a Fourth Amendment violation.

Applying this analysis would turn *Stone* on its head.  It would mean that any time a habeas court concluded the state courts were wrong in their Fourth Amendment analysis, it could reach the merits and grant habeas relief.  But *Stone* is not about whether the state courts got it right, but whether a defendant got a full and fair opportunity to try to persuade them.  Hashi makes no procedural claim about the way the motion to suppress was handled.  He apparently got the opportunity to present the evidence he thought was material.  He received a hearing and a decision from the trial court and then appellate review on his Fourth Amendment claims and as much of an opportunity for Ohio Supreme Court review as most criminal cases receive.

Because Hashi has not shown he was deprived of a full and fair opportunity to litigate his Fourth Amendment claims, Ground One should be dismissed as not cognizable in habeas corpus.

6

**Ground Two:  Conviction on Evidence Seized in Violation of the Fourth Amendment**

In his Second Ground for Relief, Petitioner again claims he was convicted on evidence seized in violation of the Fourth Amendment.  Ground Two is subject to the same analysis as Ground One and should be dismissed on the same basis.

**Ground Three:  Admission of Evidence in Violation of the Confrontation Clause**

In his Third Ground for Relief, Hashi claims that evidence was admitted against him which should have been excluded under the Confrontation Clause.  Hashi presented this claim as his Fourth Assignment of Error on direct appeal, asserting his "confrontation right was violated by the trial court's decision to allow surrogate testimony regarding two reviews by other chemists of the testing analyst's work."  The Fifth District decided this assignment of error as follows:

> {¶61} In his fourth assignment of error, Appellant argues that the trial court erred in allowing the State to present certain testimony and evidence at trial which denied him his Sixth Amendment right to confront the witnesses against him. We disagree.
>
> {¶62} The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." Likewise, Section 10, Article I of the Ohio Constitution provides, "[i]n any trial, in any court, the party accused shall be allowed to meet the witnesses face to face." The Supreme Court of the United States has held that evidence that is "testimonial hearsay" offends a defendant's Sixth Amendment right to confrontation and is not admissible. *Crawford v. Washington*, 541 U.S. 36, 51, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *State v. Ricks*, 2013-Ohio-3712, ¶ 18, 136 Ohio St. 3d 356,361,995 N.E.2d 1181, 1187; *State v. Maxwell*, 2014-Ohio-1019, ¶ 131, 139 Ohio St. 3d 12, 41, 9

N.E.3d 930, 964 ("*Crawford* also stated that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *State v. McKelton*, 2016-Ohio-5735, ¶217, 148 Ohio St. 3d 261, 300, 70 N.E.3d 508, 562.

{¶63} Here, Appellant argues the witness Matthew Congleton, from the BCI lab, was allowed to present "substitute testimony for other chemists who reviewed and certified Congleton's work. (Appellant's Brief at 26).

{¶64} At trial, Congleton testified that other personnel in the laboratory made "sure that everything was done appropriately and in a correct manner and to assure they agree with the findings on [his] report when compared to [his] data. T. at 340-341. Congleton also testified that his work was administratively reviewed by a member of his management and resulted in his testing method being approved. T. at 341.

{¶65} Upon review, we find no Sixth Amendment violation. We do not find these statements to be testimonial in nature but rather find that these statements refer to the review procedure and explain how such review occurs and what others in the lab did, not what they said.

{¶66} Appellant also challenges the last page of State's Ex. 12, which is a single page document consisting of a technical review checklist, completed by another BCI chemist.

{¶67} The trial court, after reviewing said document, found it to be merely a statement verifying that the case number was "properly listed and the name of the agency that sent the exhibit is properly listed and all the appropriate documents that are supposed to be here are here." T. at 302.

{¶68} Further, the State explained that the document was not being authorized for the truth of the matter asserted, but rather to show BCI's laboratory procedures for the testing of chemical substances.

{¶69} Upon review, we find no error in the trial court's decision to allow the use of said document for the limited purpose for which it was offered – as an illustration of the procedures followed by BCI for the testing of substances and generating of reports.

{¶70} Appellant's fourth assignment of error is overruled.

*State v. Hashi, supra***.**

The testimony complained of is that of Matthew Congleton, a forensic scientist with the Ohio Bureau of Criminal Investigation ("BCI)(Trial Transcript, ECF No. 8-3, PageID 571). Congleton testified to his education and experience and particularly that he had been with BCI since 1998. *Id.* At the time of trial he had spent sixteen years performing analyses on samples to determine the presence of controlled substances, preparing thousands of reports in that period of time. *Id.* at PageID 578. He identified the original package seized from Hashi and indicated he "had seen material like the stems in the package in previous case work in evidence that we've tested for the presence or absence of controlled substances. It's also been part of my training in identifying or recognizing plant material that can be khat." *Id.* at PageID 592. He "looked at this plant material and deduced that cathinone may be present and so I did an analysis looking for a controlled substance called cathinone." *Id.* PageID 593.

Congleton identified State's Exhibit 11 as "the report I produced that indicates my findings from the analysis that I did on this evidence." *Id.* at PageID 598. He testified the weight of the vegetation in the seized package was 3,913.7 grams ± 0.5 grams. *Id.* at PageID 606. The statutory bulk amount for cathinone is thirty grams such that the amount of vegetation he weighed is more than one hundred times bulk. *Id.* at PageID 607.

Congleton determined to perform two tests on the vegetable matter – "the first test consisted of what we call a gas chromatography-mass spectrometer test and the second test is called a gas chromatography-flame ionization detector test." *Id.* at PageID 613. Both tests showed the presence of cathinone. *Id.* at PageID 617-18. Congleton was 100% certain of that result. *Id.* Exhibit 11 which records the results of these tests, is kept in the ordinary course of business of BCI. *Id.* at PageID 622.

State's Exhibit 12 was a thirty-page document.  The first page had to do with a discovery request in the case.  The last page was prepared by someone other than Congleton.  Having examined that last page, the trial judge overruled Hashi's Confrontation Clause objection, finding

> It does not appear to me any reflection by this other person about the accuracy of any conclusions. Instead, it looks like this person is saying that the case number is properly listed and the name of the agency that sent the exhibit is properly listed and all the appropriate documents that are supposed to be here are here.

*Id.* at PageID 626-27.  The Fifth District's affirmance of this finding is at ¶¶ 66-69 of its decision, quoted *supra*.

Congleton then explains the various pages of Exhibit 12 which record the procedure and results of the tests he conducted. *Id.* at PageID 629-42, ECF No. 8-4, PageID 648-66.

In addition to objecting to the document that constitutes page 30 of Exhibit 11, Petitioner also objects to Congleton's oral testimony about review of his report by others.  The testimony in question reads:

> Q [by the prosecutor] And then, finally, the last page of your report, can you just describe in general what this is and what's, what's the procedures in BCI that result in a form like this being completed?
>
> MR. BLAKE [defense counsel]: Your Honor, I would renew the previous objection.
>
> THE COURT: Understood.  Overruled.
>
> MR. WALTER: What's the BCI procedure that lead to this being created?
>
> THE WITNESS: Whenever I do a chemical analysis as part of my routine duties, once I've completed that analysis, my notes and data and conclusions including my report that I write goes to a second chemist who does a peer review of everything I produced to make sure that everything was done appropriately and in a correct manner and to assure that they agree with the findings on my report when compared to my data.

By Mr. Walter:

Q And that creates this documentation as part of your packet, correct?

A That is correct.

Q After the peer review, is there another set of reviews that is completed at BCI per policy before it's sent back to law enforcement?

A The other review that is done after the peer review which is represented by this sheet is an administrative review done by a member of management.

Q So that's two individuals that review your report before they make their way back to law enforcement?

A This is correct.

(Trial Transcript, ECF No. 8-4, PageID 665-66).

Thus the prosecutor asked Congleton about the process of review and its purposes. He did not go beyond that and ask Congleton what were the results of the review or what the reviewers concluded, nor did Congleton volunteer testimony on those points.

In his Petition, Hashi relies on *Bullcoming v. New Mexico*, 564 U.S. 647 (2001); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); and *Williams v. Illinois*, 567 U.S. 50 (2012)(ECF No. 1, PageID 24-26). Petitioner amplifies this argument in his Traverse, relying on the same authority ECF No. 14, PageID 1129-32).

Significantly, Hashi conflates two separate propositions of law in arguing his Third Claim for Relief, violation of the Confrontation Clause and lack of a proper foundation for expert testimony. He insists that the Supreme Court has directed that

> Courts should "strictly enforc[e] the requirement that experts display genuine 'scientific, technical, or other specialized knowledge' to help the trier of fact understand the evidence or determine a fact at issue." *Williams v. Illinois,* 567 U.S. 50, 132 S.Ct.

11

> 2221, 2225, 183 L.Ed.2d 89 (2012). Here, this was not done. Rather, in this case, the scientific testing performed deviated from established and accepted practice.

(Traverse, ECF No. 14, PageID 1130).  This represents a misinterpretation of *Williams*.  The Court actually said one of the safeguards against violation of the Confrontation Clause in expert testimony circumstances is strict enforcement of state or federal evidence rules limiting the admission of expert testimony such as that embodied in Fed.  R. Evid. 702.  Certainly the Supreme Court greatly advanced litigation of expert testimony issues with its decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), now codified at Fed.  R. Evid.  702 and the cognate Ohio R. Evid. 702.  But the Supreme Court has never made *Daubert* constitutionally binding on the States which means that failure to properly apply an applicable *Daubert* rule does not render a conviction unconstitutional.

Hashi insists that Congleton's testing method for cathinone was not the "tried and true" practice.  While that may or may not be true, it is not an issue for this Court to decide.  Hashi never presented his *Daubert* objections to the Fifth District as a constitutional claim and he does not plead any *Daubert* constitutional claim in his Petition except insofar as he attempts to make it part of his Confrontation Clause argument.  If instead Hashi pleaded his **Daubert**-like claim as a constitutional claim here, we would have to reject it because the Supreme Court has never made *Daubert* constitutionally mandatory.

In fact *Williams* supports the Fifth District's decision here.  Faced with a Confrontation Clause claim, the Supreme Court upheld a conviction where an out-of-court statement about a DNA profile from Cellmark was allowed to be used as a predicate for a testifying expert's opinion.  That is far closer to allowing a jury to hear an expert opinion never subjected to cross examination than allowing the testifying expert to describe the review process, as compared with the review

12

results.

*Bullcoming* also does not support Hashi's position. There the State was allowed to introduce the report of an analyst who measured a DWI defendant's blood alcohol through the testimony of someone else. The Supreme Court held the blood alcohol report was testimonial in that it was offered in support of a key element in the case, i.e. to show the defendant's blood alcohol was above the legal limit. Because the report was testimonial in that sense, the defendant was entitled to cross-examine the analyst. Here Agent Congleton did not purport to testify about what the reviewers found when they reviewed his results, but rather that there was a review process to which his report was subject. If Hashi had any reasonable belief that the review showed his report was wrong, he could have asked Congleton what the results were. Presumably he refrained from asking those questions because he did not expect answers favorable to his case.

The Fifth District's decision on Hashi's Confrontation Clause claim is an objectively reasonable application of *Crawford v. Washington*, 541 U.S. 36 (2004), and of *Bullcoming*. Ground Three should therefore be dismissed with prejudice.


**Ground Four: Conviction on Insufficient Evidence**


In his Fourth Ground for Relief, Hashi contends he was convicted on insufficient evidence, a deprivation of his right to due process of law. He notes that he was indicted for trafficking in and possession of cathinone, but Ohio Revised Code § 3719.41 lists not cathinone, but "substituted cathinone" was a Schedule I substance (Petition, ECF No. 1, PageID 27). The Warden defends Ground Four on the merits (Return, ECF No. 9, PageID 1104, et seq.).

An allegation that a verdict was entered upon insufficient evidence states a claim under the

Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

14

> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier
> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Hashi presented an insufficient evidence claim to the Fifth District as his Fifth Assignment of Error and a manifest weight claim as his Sixth Assignment of Error.  The court decided these two claims together:

> {¶71} In his fifth and sixth assignments of error, Appellant argues his convictions for possessing or trafficking a Schedule I controlled substance were against the manifest weight and sufficiency of the evidence. We disagree.
>
> {¶72} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
>
> {¶73} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra,* 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶74} Appellant herein was convicted of one count of drug trafficking pursuant to R.C. § 2925.03(A)(2) and one count of drug possession pursuant to R.C. § 2925.11(A), which provide:

> **R.C. § 2925.03 Trafficking Offenses**
> (A) No person shall knowingly do any of the following:
> (1) ***
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.
>
> **R.C. § 2925.11 Drug Possession Offense**
> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

{¶75} As set forth above in the Statement of the Facts, the State presented evidence that Appellant appeared at the UPS store to claim the package, which was addressed to him, within hours of its arrival at the store. T. at 230, 428. Appellant paid for the package and then took physical possession of the package. T. at 232, 453. Appellant admitted that he knew the package contained khat. T. at 437.

{¶76} Further, Appellant stated that he paid approximately Four Dollars ($4.00) per piece to have the khat shipped from Germany, and that the khat in this package was "for the community", not just him. T. at 440, 442.

{¶77} Matthew Congleton testified that he performed an analysis of the khat, that it contained cathinone, and that cathinone is a Schedule I substance. T. at 245-418. He further testified that the bulk amount of cathinone is 30 grams, and the contents of the package in this case weighed 3,913.7 grams. T. at 281-282.

{¶78} Based on the foregoing, we find the State presented sufficient evidence that Appellant conspired or solicited with another to ship a Schedule I substance (Khat/cathinone) to the United States, that he took possession of the khat, and that he possessed it with the purpose of distributing it. We therefore find the State satisfied the elements of possession and trafficking in this case.

{¶79} The jury, as the trier of fact, was free to accept or reject any and all of the evidence offered by the parties and assess the

witnesses' credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson,* 5th Dist. Stark No. 2014CA00189, 2015–Ohio–3113, 41 N.E.3d 104, ¶ 61, citing *State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶80} Construing all of the evidence in favor of appellee, sufficient evidence supports appellant's convictions. Also, this is not the case in which the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be overturned and a new trial ordered.

{¶81} Appellant's conviction is not against the manifest weight or sufficiency of the evidence.

{¶82} Appellant's fifth and sixth assignments of error are overruled.

*State v. Hashi, supra.*

The Indictment in this case charges Hashi with possession and trafficking in "Cathinone, a Schedule I controlled substance." (State Court Record, ECF No. 8., Ex. 1, PageID 41-42). The Petition, however, avers

48) However, R.C. 3719.41 does not list cathinone as a Schedule I substance. Substituted cathinone is listed and the derivations of the chemical structure is set forth therein. The section also specifically excludes certain compounds.

(ECF No. 1-2, PageID 27).

Hashi made an analogous argument as his Third Assignment of Error on appeal where he alleged his indictment was fatally defective because it did not include the required element "substituted cathinone." The Fifth District overruled the Third Assignment of Error finding the Indictment gave adequate notice of the charge and the objection was untimely. *State v. Hashi supra,* ¶ ¶ 58-59. Hashi does not carry the defective indictment claim forward to this Court as

such, but argues insufficient evidence to prove Hashi possessed and trafficked "substituted cathinone."

Hashi misreads the statute.  Ohio Revised Code § 3719.41 prohibits the possession of "substituted cathinon**es**," plural, not "substituted cathinone," singular.  The statute reads:

> (7) Substituted cathinones - any compound except bupropion or compounds listed under a different schedule, structurally derived from 2-aminopropan-1-one by substitution at the 1-position with either phenyl, naphthyl, or thiophene ring systems, whether or not the compound is further modified in any of the following ways:
>
> > (a) By substitution in the ring system to any extent with alkyl, alkylenedioxy, alkoxy, haloalkyl, hydroxyl, or halide substituents, whether or not further substituted in the ring system by one or more other univalent substituents;
> >
> > (b) By substitution at the 3-position with an acyclic alkyl substituent;
> >
> > (c) By substitution at the 2-amino nitrogen atom with alkyl, dialkyl, benzyl, or methoxybenzyl groups;
> >
> > (d) By inclusion of the 2-amino nitrogen atom in a cyclic structure.
>
> > **Examples of substituted cathinones** include, but are not limited to, methylone (3,4-methylenedioxymethcathinone), MDPV (3,4-methylenedioxypyrovalerone), mephedrone (4-methylmethcathinone), 4-methoxymethcathinone, 4-fluoromethcathinone, 3-fluoromethcathinone, Pentedrone (2-(methylamino)-1-phenyl-1-pentanone), pentylone (1-(1,3-benzodioxol-5-yl)-2-(methylamino)-1-pentanone), 2-(1-pyrrolidinyl)-1-(4-methylphenyl)-1-propanone, alpha-PVP (1-phenyl-2-(1-pyrrodinyl)-1-pentanone), **cathinone** (2-amino-1-phenyl-1-propanone), and methcathinone (2-(methylamino)-propiophenone).

Giving the statute its natural reading, it prohibits possession or trafficking in any one of a number of substituted cathinones, including cathinone (2-amino-1-phenyl-1-propanone).

Applying that reading, Mr. Congleton's testimony was sufficient because it identified cathinone

in the substance seized from Hashi.

The defense presented a pharmacist named Bellotto who criticized Congleton's testing procedures and argued they were not scientifically reliable.  However, he did not perform testing on the substance using competing methods[2] nor opine that the seized substance was anything other than khat.  Hashi relied on Bellotto's testimony to impeach Congleton's but the issue of which expert to believe is a question of credibility for the jury.  Congelton used known chemical analysis tools, gas chromatography and mass spectrometry.  It is not as if he testified "I know khat when I see it."[3]  The jury was free to accept Bellotto's criticism of Congleton's methods, but it was also free to doubt his conclusions, knowing that he had been hired by the defense for a specific purpose.

Congelton's identification of the drug is bolstered by Hashi's identification of the plant matter as khat when it was initially seized.   This is not like the common drug identification issue when a dealer, caught red-handed, says he thought the white powder was baking soda instead of cocaine.  Instead, Hashi apparently tried to make a personal use argument to Deputy Gibson and then said it was for the "community." See *State v. Ibrahim*, 2013-Ohio-983 (Ohio App. 9th Dist. 2013), cited by Petitioner, for a description of khat and its use as an intoxicant.

Because cathinone is one of the substituted cathinones whose possession is prohibited in Ohio and there was sufficient evidence to support the jury's finding that Hashi possessed cathinone in a sufficient quantity, the Fifth District's decision is a reasonable application of *Jackson* and is entitled to deference under 28 U.S.C. § 2254(d)(1).  Ground Four should therefore be dismissed.

---

[2] Apparently the defense sought to allow him to do testing, but the trial court did not permit it.  The disallowance of the requested testing was not raised on direct appeal and is, in any event, not carried forward to this habeas corpus proceeding.
[3] Which would have been a paraphrase of Justice Stewart's test for recognizing obscenity.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 07, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #